# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

NELDON NEAL,            )
                             )
            Petitioner,       )
                             )
     vs.                     )      Case No. 15-3243-CV-S-SRB-P
                             )
JAY CASSIDY,          )
                             )
            Respondent.    )

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
## AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Neldon Neal, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on June 5, 2015, seeking to challenge his 2011 conviction and sentence for involuntary manslaughter, which was entered in the Circuit Court of Pulaski County, Missouri.

Petitioner asserts four (4) grounds for relief: (1) that petitioner's second trial violated his rights under the Double Jeopardy Clause; (2) that trial counsel was ineffective for failing to object to testimony by Marsha Sumrall; (3) that there was a variance between the second amended information and the jury instructions in the second trial; and (4) that petitioner was unlawfully tried and convicted of a crime that was not charged. Respondent contends that Ground 2 is without merit and that Grounds 1, 3, and 4 are procedurally barred.

## FACTUAL BACKGROUND

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> The evidence adduced at Defendant's second trial is summarized here in the light most favorable to the verdict. See State v. Stidman, 259 S.W.3d 96, 98 (Mo.App. S.D.2008). On March 13, 2007, Marsha Sumrall and her small child were living with Victim and Defendant at their trailer in Roby. Ms. Sumrall was formerly Victim's daughter-in-law and viewed Victim as her "mom." Defendant and Nathan Light arrived at the trailer around 2:00 p.m.

Mr. Light went to Defendant's trailer to help him with an awning, to take a shower (because Mr. Light did not have hot water at his residence), and to have a sandwich. Both Defendant and Mr. Light had been drinking alcohol, and Mr. Light believed they were both drunk. After the two men arrived at the trailer, Defendant changed his mind about doing anything with the awning. Mr. Light went inside to take a shower, and while he was showering he heard "murmuring and cussing and carrying on, but [he] ignored it[.]"

Ms. Sumrall, who was inside the trailer, heard Defendant yelling at Victim outside the residence. The yelling continued as the two came inside the trailer. Defendant was calling Victim derogatory names and accusing her of infidelity. Defendant grew angrier "and started foaming at the mouth." Defendant also yelled at Ms. Sumrall, calling her names. He threw a barstool three times. Ms. Sumrall, who was frightened by Defendant's behavior, took her child and ran to her car, forgetting to take her car keys with her. When she went back inside to retrieve her keys, Defendant was standing over Victim, holding a knife sharpener. Victim was crouched down and had her hands in the air. Ms. Sumrall "[had] never seen a look of terror in [Victim's] eyes like that." Ms. Sumrall knew where a gun was kept inside the trailer. She "grabbed the gun and turned and pointed it [at Defendant], and [she] tried to make it work[,]" but the gun did not fire. At that moment, Mr. Light came into the living room. Defendant said he was sorry, put the knife sharpener on the kitchen counter, and went to the back of the trailer.

When Defendant left the room, Ms. Sumrall gave the gun to Victim and told her to kill Defendant. Instead, Victim, still holding the gun, sat in a chair. Defendant returned to the living room—holding a bigger gun—and took from Victim the smaller gun she was holding. Ms. Sumrall described what happened next as follows:

> Um, [Defendant] said, bitch, pull a gun on me and I'll kill you. You know, at that time I turned to run out the front door, and he put the little gun to the back of my head and it went click. And he's like, stop bitching, I'll shoot. I then see [my child] standing in front of my car, so I knew I had to get to her.

Ms. Sumrall ran toward her child and Defendant chased her. Victim ran after Defendant and jumped on his back. Defendant threw Victim off his back, and she landed against a truck parked next to Ms. Sumrall's car. Defendant then pointed the gun in Victim's direction and fired. Ms. Sumrall heard the gunshot and saw smoke come out of Victim's chest. Victim "grabbed her chest and toppled to the ground."

Ms. Sumrall put her child in her car, directed Mr. Light to also put Victim in, retrieved her car keys from inside the trailer, and drove to a convenience store in

Roby. A Texas county deputy, medical personnel, and other law enforcement-related persons responded to Ms. Sumrall's car at the convenience store. The Texas County coroner testified that Victim was in the back seat "in a sitting position and deceased."

Several officers then went to Defendant's residence and found it vacant. A search for Defendant ensued, and he was eventually located sixty-two days later at a campsite in "a very, very remote rugged wooded area along the [Gasconade R]iver." Defendant was taken into custody and executed a written waiver of rights before being questioned. During that questioning, Defendant informed the authorities where to find the gun he had used to shoot Victim. The interview of Defendant was recorded. Although that recording was admitted into evidence and played for the jury, Defendant did not include it in the record on appeal.

Respondent's Exhibit E, pp. 3-4.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 2 – INEFFECTIVE ASSISTANCE OF COUNSEL

In Ground 2, petitioner contends that his trial counsel was ineffective for failing to object to testimony from Sumrall regarding petitioner's alleged previous abuse of his victim. Specifically, petitioner contends that such testimony was prejudicial in that if trial counsel had

---

[1]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

objected to the testimony, the trial court would have sustained the objection and there is a reasonable probability that the outcome of the trial would have been different.

In order for petitioner to successfully assert a claim for ineffective assistance of counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). This Court may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . ." Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his Rule 29.15 motion, the Missouri Court of Appeals disposed of petitioner's claim as follows:

> Neal argues his trial counsel was ineffective for failing "to object and move for a mistrial when Marsha Sumrall testified to previous violent behavior by [Neal] on the basis that it was irrelevant and highly prejudicial evidence of uncharged bad acts." We disagree.
>
> "Trial counsel is granted vast latitude and judgment about whether or when to make objections." Greer v. State, 406 S.W.3d 100, 105 (Mo. App. 2013). "Merely because a trial counsel failed to object to everything objectionable, does

not equate to incompetence." Id.; Lung v. State, 179 S.W.3d 337, 342 (Mo. App. 2005). Our Supreme Court has explained that, "[i]n many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good." State v. Tokar, 918 S.W.2d 753, 768 (Mo. banc 1996).

Here, [petitioner's trial counsel] testified that they did not object for strategic reasons and also feared the objections would highlight the statements, thereby doing more harm than good. The motion court obviously believed their testimony, and this Court defers to the motion court's determination of credibility. Vanzandt, 212 S.W.3d at 231. We also agree with the motion court, that such trial strategy was reasonable under the circumstances. See Tokar, 918 S.W.2d at 768; see, e.g., Worthington v. State, 166 S.W.3d 566, 581-82 (Mo. banc 2005). "If trial counsel's failure to object is based on reasonable trial strategy, the movant cannot demonstrate counsel was ineffective." Bradley v. State, 292 S.W.3d 561, 567 (Mo. App. 2009); Williams v. State, 205 S.W.3d 300, 305 (Mo. App. 2006) (ineffective assistance of counsel is rarely found in cases where trial counsel has failed to object); see also Worthington, 166 S.W.3d at 582 ("[c]ounsel cannot be ineffective for making reasonable choices of trial strategy, even if in hindsight another strategy might have been more favorable"). Thus, Neal failed to prove his claim by a preponderance of the evidence. Rule 29.15(i); Tokar, 918 S.W.2d at 761. Accordingly, we find no clear error in the motion court's conclusion that trial counsel's failure to object or move for a mistrial with respect to Sumrall's statements did not constitute ineffective assistance of counsel. Point denied.

After reviewing the entire record, we do not have a definite and firm impression that a mistake was made. Therefore, the findings and conclusions of the motion court are not clearly erroneous. See Rule 29.15(k); Williams, 168 S.W.3d at 439. Accordingly, the motion court's order denying Neal's Rule 29.15 amended motion is affirmed.

Respondent's Exhibit J, pp. 7-8 (footnotes omitted).

The resolution of Ground 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the

Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[2]  Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 2 is denied.

## <u>GROUNDS 1, 3, & 4 – PROCEDURAL DEFAULT</u>

In Ground 1, petitioner contends that his second trial violated his rights under the Double Jeopardy Clause.   In Ground 3, petitioner contends that there was a variance between the second amended information and the jury instructions in the second trial.   In Ground 4, petitioner contends that he was unlawfully tried and convicted of a crime that was not charged.   Respondent contends that Grounds 1, 3, and 4 are procedurally defaulted.

In <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

<u>Id.</u> at 750.   Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), and <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).   <u>Coleman</u>, 501 U.S. at 748-50.

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.   Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. at 1523.

A review of the record shows that petitioner did not raise grounds 1, 3, and 4 on appeal from the denial of his Rule 29.15 motion.   Therefore, Grounds 1, 3, and 4 are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice.   Coleman, 501 U.S. at 750.   The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why these grounds were not pursued on appeal from the denial of his Rule 29.15 motion and, therefore, has failed to demonstrate cause for his procedural default.   As a result, we do not consider prejudice.   The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted.   Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997).   To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial."   Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995).   Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of Grounds 1, 3, and 4.   He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence.   Id.   Therefore, federal review of Grounds 1, 3, and 4 is barred.

Grounds 1, 3, and 4 are denied.

**CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

**ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is **DENIED**;

(2) this case is **DISMISSED** with prejudice; and

(3) the issuance of a certificate of appealability is **DENIED**.

  /s/ *Stephen R. Bough*          
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:   November 3, 2015.